IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CHIEF AUTOMOTIVE SYSTEMS, INC., | ) ) ) | 4:97CV3017 |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM AND ORDER** |
| JOHN ASTERINO d/b/a N.E. HOLDING CORP., a/k/a JOHN ASTERINO d/b/a NE BANKCO HOLDING CORP., | ) ) ) ) ) | |
| Defendants. | ) ) | |

    This matter is before the court upon briefs and evidence submitted in connection with an order for John Asterino ("Asterino") to show cause why he should not be held in contempt for violating a 1997 consent decree. Chief Automotive Systems, Inc. ("Chief") instituted this action in January, 1997 by filing a complaint which alleged that Asterino had wilfully infringed Chief's trademarks and engaged in unfair trade practices, both in violation of federal statutes, and wilfully violated statutory and common law of the State of Nebraska. Ultimately, Chief and Asterino entered into a consent judgment in 1997. Among other things, that 1997 consent judgment permanently enjoins Asterino from "adopting or using any mailing address in Nebraska" and from "adopting or using any phone number or mailing address which is similar to those of Chief ." In January, 2007, Asterino placed an advertisement in a national magazine for the sale of a Chief machine, apparently in an attempt to sell a second-hand Chief machine he was negotiating to purchase. That advertisement did not direct interested buyers to contact John Asterino at his North Carolina place of business. Rather, it directed them to a Grand Island, Nebraska street address or a toll-free telephone number distinguishable from Chief's toll-free number in only one respect: it had a different toll-free prefix. The evidence before me establishes that Asterino is again engaging in the very behavior he was

permanently enjoined against and I hold Asterino in contempt, as I explain further below.[1]

## I. BACKGROUND

*Jurisdiction*

The response to the order to show cause is properly before the court.  The 1997 consent judgment specifically provides that "[t]his court shall retain continuing jurisdiction over the parties and the subject matter of this action to ensure compliance with the terms and conditions of this Consent Judgment."  (Filing 15-3 at ¶ 5.)  A civil contempt proceeding is not an independent action, but part of the original cause of action.  4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1145 & n.10 (3d ed. 2002).  The motion for order to show cause and supporting documents were served upon Asterino and his attorney of record. Generally, service of an order to show cause why a party should not be held in contempt may be made directly on parties.  *Id.* § 1145 at 435.  Asterino has responded to the motion.  (Filing 29.)

*1997 Consent Decree*

The pertinent provisions of the 1997 consent decree are as follows.

IT IS HEREBY ORDERED, ADJUDGED and DECREED THAT:

---

[1] The day before the motion for order to show cause why Asterino should not be held in contempt in this matter was filed, a new lawsuit was filed by another Chief entity against Asterino and another defendant.  Case No. 8:07CV058.  The same attorneys represent Chief and Asterino in the two cases.   A temporary restraining order was entered in that case. This memorandum and order cites some evidence before the court in the 2007 case, in addition to evidence submitted in this case.

1.  Asterino be, and hereby is, permanently enjoined and restrained from:

   a.  Directly or indirectly using any trademark or service mark belonging to or used by Chief;

   b.  Directly or indirectly using any mark, word or design that is similar to any mark belonging to or used by Chief;

   c.  <u>Directly or indirectly committing any unfair trade practices directed toward Chief or with the object of obtaining business and customers of Chief, including, but not limited to</u> (i) adopting or using any names to identify his business that imply a connection to Chief; (*ii) adopting or using any mailing address in Nebraska; (iii) adopting or using any phone number or mailing address which is similar to those of Chief;* (iv) producing or reproducing photographs of bona fide Chief goods or of goods designed to look like bona fide Chief goods for use in connection with the sale of non-Chief goods; (v) writing, producing, commissioning or using any advertising or promotional materials implying or claiming any connection with or certification of approval from Chief; and (vi) in any manner whatsoever, implying or claiming any connection with or certification of approval from Chief for any goods manufactured, sold or distributed by Asterino or any related party and any agent of his; [and]

   d.  Directly, indirectly or contributorily, infringing upon any copyright belonging to or claimed by Chief[.]

(Filing 15-3 at 2-3 (emphasis added).)

*Material Facts*

I find the material facts to be as set forth below.

-3-

1.      Chief manufactures alignment machines and is the owner or licensee of the trademarks "Impulse" and "Chief." (Case 8:07CV058, filing 10-3 at ¶ 3.)

2.      An advertisement in the January 2007 issue of Fixed Ops magazine offered for sale a body squaring and alignment machine. The advertisement included a photograph of a Chief alignment machine (identical to an image presently on Chief's website). The advertisement clearly shows the "Chief" and "Impulse" trademarks on the platform of the alignment machine, directly below the rear wheel of the vehicle positioned on the machine.[2] Prospective buyers were directed to contact "Access Capital Leasing" at "2124 Lawrence Lane, #113, Grand Island, Nebraska" or to telephone "Paul Clemens" at telephone number "888-445-9262."

3.      Chief is headquartered in Grand Island, Nebraska. (Filing 13-3 (consent judgment) at 1.) Asterino resides and works in West Virginia. (*Id.*) The Grand Island, Nebraska street address listed in the Fixed Ops magazine advertisement is that of a UPS store. (Case 8:07CV058, filing 10-3 at ¶ 5.)

4.      Chief's toll-free telephone number is 800-445-9262. (Case 8:07CV058, filing 10-3 at ¶ 6.) The number in the January 2007 advertisement is identical except that it uses the "888" toll-free prefix rather than the "800" prefix. (Filing 15-5.)

5.      Although Asterino claims in a declaration that "the ad identifies a company based in Grand Island, Nebraska which is neither owned nor controlled by me" (filing 29 at p.1, ¶ 6), Asterino has admitted in a hearing in this court that he obtained the telephone number and address listed in the advertisement. (Filing 23, Ex. 2 (transcript of TRO proceedings in case no. 8:07CV68) at 10:14-15; 12:12-18, 23-35; 13:1-4.)

---

[2]Asterino asserts that "[t]he ad does not show any of the Plaintiff's trademarks as alleged by Plaintiff." ( Filing 29 at p.1, ¶2.) This assertion is preposterous.

-4-

6. Asterino admits that he placed the advertisement in question. (Filing 29 at p.1, ¶ 2 ("I published the ad").)

7. Chief did not give permission for placement of the advertisement in Fixed Ops magazine. (Case 8:07CV058, filing 10-3 at ¶ 7.)

8. Asterino submitted an affidavit to this court dated May 15, 1997 demonstrating his steps to comply with the consent judgment. (Filing 15-4 (copy of filing 11 which was not filed electronically when docketed).) The 1997 affidavit indicates that Asterino had used an "800" telephone number for his West Virginia business which was almost identical to the phone number of Chief and had represented that he had or maintained a place of business in Nebraska. To comply with the Consent Judgment, he caused an "800" number referenced in paragraph D of the Consent Judgment to be disconnected. (Filing 15-4 at ¶2(B).)[3] He also "destroyed each and every brochure, pamphlet, letterhead and advertisement which represented that he had or maintained any place of business in the state of Nebraska; or that indicated or implied any connection with the state of Nebraska." (Filing 15-4 at ¶2(A).) Finally, he destroyed anything in his possession or control or in the possession or control of his agents or employees which bore "a trademark or service mark belonging to or used by Chief." (Filing 15-4 at ¶2 (C).)

## II. ANALYSIS

Asterino's response to the order to show cause ignores the plain language of the 1997 consent decree. As pertinent to this show cause order, the consent decree permanently enjoins Asterino from

---

[3] The referenced paragraph of the consent judgment references "an '800' phone number for [Asterino's] West Virginia business which [is] amost identical to the phone number . . . of Chief." (Filing 15-3 at p.2 ¶ D.)

> <u>[d]irectly or indirectly committing any unfair trade practices directed toward Chief or with the object of obtaining business and customers of Chief, including, but not limited to</u> . . . . (*ii) adopting or using any mailing address in Nebraska; [and] (iii) adopting or using any phone number or mailing address which is similar to those of Chief* . . . .

(Filing 15-3 at ¶ 1(c).) The <u>underlined</u> language bars unfair trade practices. The *italicized* language defines particular unfair trade practices, and those barred unfair trade practices include but are not limited to use of a Nebraska mailing address or a phone number "similar" to Chief's. Asterino asserts that since "[t]his is not a case of trademark infringement" but rather a lawful attempt to resell a used Chief machine, he has not violated the consent decree. (Filing 29.) This specious argument ignores the clear language in the consent decree barring unfair trade practices, and that defining the use of a Nebraska mailing address or phone number similar to Chief's as unfair trade practices. It is irrelevant whether such acts constitute trademark infringement.

Asterino does not dispute (and could not credibly dispute) that the advertisement lists a Grand Island, Nebraska address. He admits that he placed the advertisement. The consent judgment enjoins Asterino from "directly or indirectly . . . adopting or using *any mailing address in Nebraska*." ( Filing 15-3 at ¶ 1(c) (ii) (emphasis added).) Asterino's assertion that he "did not open an office in Nebraska and has identified a dealer, an independent contractor, where inquiries could be directed by perspective [sic] customers" (filing 29 at 4), is beside the point. He admits that he obtained the address listed in the advertisement, and the consent decree bars even indirect use of a Nebraska address.[4]

---

[4]Though I need not resolve the issue for purposes of determining whether Asterino is in contempt of the consent decree, it is highly unlikely that the company named in the advertisement is in fact an unrelated third party. The advertisement directed potential buyers to a "Paul Clemens" at the listed telephone number and address. When counsel for Chief telephoned "Paul Clemens", the call was returned

Unbelievably, Asterino asserts that "there is no protectable interest in a telephone number so long as it is not identical to Plaintiff's. The telephone number used by Defendant is not identical to Plaintiff's and the consent judgment only requires Defendant not to use Plaintiff's telephone number." (Filing 29 at 1.) This assertion ignores plain language in the consent decree which clearly enjoins Asterino from "adopting or using any phone number or mailing address which is *similar* to those of Chief." (Filing 15-3 at ¶ 1(c) (iii) (emphasis added).) The phone number listed by Asterino in the advertisement is "888-445-9262." Chief's telephone number is "800-445-9262." The two numbers could not be more similar without being identical.

For the foregoing reasons,

IT IS ORDERED:

1. John Asterino is hereby found in contempt of the 1997 consent decree in this matter;

2. On or before July 16, 2007, Asterino is directed to submit to this court an affidavit, signed under penalty of perjury, which accounts for all of his gains, profits, and advantages derived by his use of a Nebraska mailing address and telephone number similar to Chief's,

3. On or before July 16, 2007, Chief shall submit evidence of the reasonable attorneys' fees and court costs it incurred in bringing its motion for order to show cause,

---

by a person who initially identified himself as Paul Clemens but later stated he was John Asterino. (No. 8:07CV058, Filing 10-4 (Aff. of Chief's counsel, submitted to indicate compliance with Fed. R. Civ. P. 65(b) in separate proceeding for temporary injunction).)

4. On or before July 31, 2007, Asterino shall file his objections, if any, to the attorneys' fee and court costs claimed by Chief, and Chief shall file its objections, if any, to Asterino's affidavit of accounting, and

5. Judgment finding Asterino in contempt, directing Asterino to pay damages to Chief, and awarding reasonable attorneys' fees and court costs to Chief shall be entered at a later date.

June 27, 2007.                          BY THE COURT:

                                        *s/Richard G. Kopf*
                                        United States District Judge